IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



POWER MARKETING DIRECT, INC.,

Plaintiff,

v.

Action No. 3:07-CV-681

INTERNATIONAL BEDDING CORP.,

Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Dismiss or for a More Definite Statement by International Bedding Corp. ("IBC"). This Memorandum Opinion explains the Court's ruling from the bench denying the Motion and directing the parties to brief the Court about the place where the alleged contract between the parties was formed.

1. Background[1]

Power Marketing Direct, Inc. ("PMD") distributes bedding products (e.g., mattresses) to independent, licensed dealers. Since 1999, PMD has marketed those products using a word mark, the phrase "Royal Heritage"; in February 2002, the company began using a stylized version of that word mark, which includes a patterned border, an image of a crown, and "Royal Heritage" in a "stylized block font," to market the products ("the stylized mark").

---

[1] This section summarizes the plaintiff's allegations, which must be regarded as true in the context of this Motion. See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).

1

PMD owns those marks,[2] has used them continuously to market bedding products, and has been the only entity to use them to market bedding products. And, PMD alleges that the marks are distinctive and designate the origin of PMD's bedding products.

In about January 2006, IBC orally agreed to manufacture bedding products for PMD. Under the agreement, IBC purchased labels that bore the word mark or the stylized mark and a product number from PMD and attached the labels to the products that it manufactured. In addition, IBC agreed (1) to attach "Royal Heritage" labels only to bedding products that it manufactured under the agreement, and (2) that it would not distribute bedding products bearing a "Royal Heritage" label to any retailers that were not licensed by PMD. In about July 2006, PMD stopped purchasing bedding products from IBC, and it "offered to purchase IBC's ... inventory of labels."

Now, PMD claims that since at least August 2007, IBC has sold bedding products bearing "Royal Heritage" labels that IBC purchased from PMD to retailers that were not licensed by PMD, including two Mattress Warehouse stores in Richmond. The labels are "identical in all material respects" to the labels that PMD uses to market its products. Thus, PMD filed suit, claiming that IBC is liable for violating section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), unfair competition under Virginia law, and breach of contract under Ohio law. PMD asks the Court to enjoin IBC from using the "Royal Heritage" word mark and the stylized mark; require IBC to turn over anything that bears

---

[2] According to the United States Patent and Trademark Office, PMD filed applications to register the phrases "Royal Heritage" and "Royal Heritage Collection" on August 24, 2007, and "Royal Heritage Furniture," "Royal Heritage Home Furnishings," and "Royal Heritage Bedding" on August 27, 2007.

either of those marks to PMD; award PMD any profits that IBC has earned from using either of those marks, as well as treble compensatory damages, punitive damages, attorneys' fees, costs, and any other suitable relief. Now, IBC asks the Court to dismiss the Complaint, arguing that PMD failed to notify IBC of the grounds for the claims against it.

2.  <u>Discussion</u>

A motion to dismiss for failure to state a claim for which relief can be granted, <u>see</u> Fed. R. Civ. P. 12(b)(6), challenges the legal sufficiency of a claim, not the facts supporting it. <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957); <u>see</u> <u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007). Thus, in ruling on a Rule 12(b)(6) motion, a court must regard as true all of the factual allegations in the complaint, <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007), as well as any facts that could be proved that are consistent with those allegations, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and view those facts in the light most favorable to the plaintiff, <u>Christopher v. Harbury</u>, 536 U.S. 403, 406 (2002). While a "short and plain statement" of the plaintiff's claim for relief is sufficient, Fed. R. Civ. P. 8(a)(2), the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," so the plaintiff must allege facts that show that its claim is plausible, not merely speculative. <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964, 1966 (2007). The court does not have to accept legal conclusions that are couched as factual allegations, <u>Bell Atl. Corp.</u>, 127 S.Ct. at 1964, or "unwarranted inferences, unreasonable conclusions, or arguments," <u>E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship</u>, 213 F.3d 175, 180 (4th Cir. 2000). But, the plaintiff does not have to show that it is <u>likely</u> to obtain relief: if the

3

complaint alleges – directly or indirectly – each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. <u>Bell Atl. Corp.</u>, 127 S.Ct. at 1969 & n.8. Thus, a complaint may be dismissed either because it alleges facts for which the court cannot grant relief, or because it states a claim that is cognizable but speculative because it is not supported by facts.

A. <u>Unfair Competition</u>

Count I of PMD's Complaint charges IBC with competing unfairly, in violation of the Lanham Act, and in Count IV[3] PMD claims that IBC is liable for unfair competition in violation of Virginia law. Those claims are governed by "essentially the same" standard. <u>Synergistic Int'l, LLC v. Korman</u>, 470 F.3d 162, 171 n.9 (4th Cir. 2006).

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125, provides that

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

---

[3] The Complaint does not contain Count III.

4

15 U.S.C. § 1125(a)(1) (2008). That law, like the rest of "[t]he law of unfair competition[,] has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion [about the] source [of goods]. While that concern may result in the creation of 'quasi-property rights' in communicative symbols, the focus is on the protection of consumers...." Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 157 (1989). To prevail on a claim of unfair competition under the Lanham Act, a party must show "that it had a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." Synergistic Int'l, 470 F.3d at 170; but see Acme Pad Corp. v. Warm Prods., Inc., 26 F. App'x 271, 275 (4th Cir. 2002) (unpublished) (stating that the Lanham Act does not apply only to registered trademarks, citing three opinions by the Supreme Court).

The key question is whether a defendant's use of a trademark is likely to confuse consumers. Scotch Whiskey Ass'n v. Majestic Distilling Co., 958 F.2d 594, 597 (4th Cir. 1992). To answer that question, courts have weighed seven factors:

1) The strength or distinctiveness of the plaintiff's trademark;
2) The similarity of the two marks;
3) The similarity of the goods or services that the marks identify;
4) The similarity of the facilities that the two parties use in their businesses;
5) The similarity of the advertising used by the two parties;
6) The defendant's intent; and
7) Whether consumers were actually confused.

Synergistic Int'l, 470 F.3d at 171. The seventh element of that test is the most probative. Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., 87 F.3d 654, 660 (4th Cir. 1996). And, evidence that the defendant acted in bad faith toward the plaintiff supports

5

the conclusion that the defendant intended to deceive the public. Shakespeare Co. v. Silstar Corp. of Am., 110 F.3d 234, 239–41 (4th Cir. 1997).

Generally, evaluating a claim that is governed by that test involves resolving questions of fact; thus, dismissing the claim on a Rule 12(b)(6) motion is not appropriate. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., — F. Supp. 2d —, 2008 WL 2557380, at *9 (E.D. Va. June 18, 2008) (making an exception for claims involving products or industries that are not similar as a matter of law). To grant a motion to dismiss a claim for unfair competition, a court must find that the plaintiff's allegations – regarded as true – do not satisfy the seven-factor test provided above. See Acme Pad Corp., 26 F. App'x at 275 (reversing a ruling granting a motion to dismiss, on the ground that the plaintiff provided "uncontroverted evidence" that its customers were actually confused and showed that the defendant acted in bad faith, suggesting that it intended to deceive the public); see also Nemet Chevrolet, — F. Supp. 2d at —, 2008 WL 2557380 at *9 (dismissing a claim by a party that did not allege that the marks or products at issue were similar or that any consumers were actually confused).

Here, IBC argues that PMD's allegations do not satisfy the seventh requirement. Since PMD authorized IBC to attach "Royal Heritage" labels to the bedding products that it manufactured, IBC contends, PMD should not have been surprised that IBC did so. Thus, any confusion that resulted was "completely of [PMD's] own doing." Since PMD did not allege that IBC used the labels without authorization, IBC concludes, PMD failed to state a claim for unfair competition.

By focusing on (1) the way that PMD – not consumers – reacted to IBC's use of the labels, and (2) whether confusion <u>should</u> have resulted, not whether it was <u>likely</u> to result, IBC applies the "likelihood of confusion" test incorrectly. Of greater significance, however, is the fact that IBC does not cite any authority to support its claim that "lack of authorization" is an element of a claim for unfair competition under the Lanham Act or Virginia law. On the contrary, acquiescence is an affirmative defense. <u>World Championship Wrestling, Inc. v. GJS Int'l, Inc.</u>, 13 F. Supp. 2d 725, 733–34 (N.D. Ill. 1998), <u>aff'd</u>, 191 F.3d 457 (7th Cir. 1999); <u>see generally</u> <u>Sweetheart Plastics, Inc. v. Detroit Forming, Inc.</u>, 743 F.2d 1039, 1046 (4th Cir. 1984) (discussing the defense of estoppel by acquiescence). Thus, PMD does not have to plead that IBC acted without authorization.[4] <u>See</u> <u>Jones v. Bock</u>, 127 S.Ct. 910, 919 (2007) (ruling that a petitioner was not required to plead facts that negated an affirmative defense, and stating generally that courts should not impose heightened pleading standards).

Notably, IBC does not deny that its conduct may have confused consumers. In fact, IBC's argument strengthens PMD's claim: the fact that IBC used "the very labels" that it purchased from PMD increased the likelihood that consumers were confused about the origin of IBC's products. And, PMD has clearly alleged that (1) its marks were distinctive; (2) the marks that IBC used were similar – indeed, identical – to PMD's marks; (3) IBC used those marks to identify similar goods, other bedding products; (4) IBC used the marks

---

[4] Even if PMD were required to plead that IBC manufactured and distributed bedding products bearing "Royal Heritage" labels without PMD's permission, PMD clearly did so in paragraphs 26–29 and 37 of its Complaint.

7

"willful[ly]"; and (5) that consumers were likely to be confused by IBC's use of the marks. These allegations are sufficient to plead a violation of section 43(a) of the Lanham Act and unfair competition under Virginia law. Thus, Counts I and IV will not be dismissed.

B. <u>Breach of Contract</u>

In Count II, PMD alleges that IBC breached an oral agreement to manufacture bedding products for PMD by attaching "Royal Heritage" labels to products that it did not produce under that contract or distributed to retailers that were not licensed by PMD. PMD argues that Ohio law governs Count II without justifying that claim, except by stating that it is an Ohio corporation, thereby suggesting that the contract was formed in Ohio. At this stage of these proceedings, it does not matter whether this claim is governed by the law of Ohio (or Virginia, as IBC implies): according to either standard, PMD has adequately alleged a claim for breach of contract. But, so that the Court may evaluate this claim correctly in the future, it directed the parties to file supplemental briefs addressing the issue of where the alleged contract was formed.

According to Ohio law, to prove a claim for breach of contract, a party must show that (1) the contract existed; (2) the plaintiff fulfilled its obligations; (3) the defendant failed to fulfill its obligations; and (4) damages resulted from that failure. <u>E.g.</u>, <u>Circuit Solutions, Inc. v. Mueller Elec. Co.</u>, 2008 WL 2485157, at *4 (Ohio Ct. App. June 23, 2008). Similarly, under Virginia law, the "elements of a cause of action for breach of contract are (1) a legal obligation of a defendant to a plaintiff, (2) a violation or breach of that obligation,

and (3) a consequential injury or damage to the plaintiff." Hamlet v. Hayes, 641 S.E.2d 115, 117 (Va. 2007).

The primary basis of IBC's argument that the Court should dismiss this claim is that it was not pled sufficiently specifically.[5] While IBC correctly argues that PMD failed to describe the terms of the contract in detail, PMD alleged that a contract was formed in paragraphs 22 and 24 of its Complaint, that IBC breached the contract by attaching "Royal Heritage" labels to bedding products that were not produced in accordance with the contract, or were sold to two Mattress Warehouse stores that were not licensed by PMD, in paragraphs 26–29 and 37, and that PMD was damaged by that breach, in paragraphs 38 and 46. While PMD does not allege explicitly that it performed all of its obligations under the contract, it states that it sold the "Royal Heritage" labels to IBC, as the contract required. And, while PMD does not allege explicitly that IBC is capable of accepting an offer, that the object of the contract was legal, or that consideration was provided, those allegations are not necessary to notify IBC of the grounds for this claim. Thus, the allegations in the Complaint give IBC notice of the ground for PMD's claim: that IBC breached the contract by using the labels that it purchased from PMD in a way prohibited by the agreement. That claim is "short and plain," satisfying Federal Rule of Procedure 8(a)(2). Accordingly, the Court will allow this claim to proceed.

---

[5] The opinions that IBC cites to support that position – an opinion by a district court in Pennsylvania that resolved a motion to enforce a settlement agreement, not a motion to dismiss; and a ruling by the Virginia Supreme Court from 1897, which does not (and could not) refer to the Federal Rules of Civil Procedure that govern pleading in this Court – are inapposite.

3. Conclusion

For the reasons stated, the Court DENIED the Motion to Dismiss or for a More Definite Statement and DIRECTED the parties to file supplemental briefs addressing the issue of where the alleged agreement was formed.

It was SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 3rd day of July 2008

10